Nott, Ch. J.,
delivered the opinion of the court:
This is one of those cases where a citizen of the United States has suffered sei’ious loss by ignorance of Federal law and too great reliance upon the assertions and assurances of officers of the Government. The court, nevertheless, has -regretfully reached the conclusion that his losses and injuries lie beyond the limits of judicial redress.
The misfortunes of the claimant began with the Act 11th August, 1888 (25 Stat. L., p. 425), which authorized the Secretary of War to establish a hai’bor line. On the 14th May, 1889, the Secretary, basing his plan undoubted^ on the existing plan of the Chief of Engineers for improving the harbor of Savannah by widening the liver, established a line which clipped off a strip of Hutchinson’s Island opposite the city 100 and more feet in width, the property of the claimant, and compi’ising substantially all of his river frontage. Two years afterwards Congress enacted another .statute, which authorized the Secretary to establish harbor lines generally, and contained a stringent provision making it a misdemeanor, punishable by fine and imprisonment, for any person to make encroachments beyond a hai’bor line established by the Secretary. (Act 19th September, 1890, 26 Stat. L., p. 454, sec. 12.) Again, two years later, Congress enacted a third statute, making an appropriation of $318,750 for “improving harbor at Savannah,” and authorizing the Secretary of War to enter into contracts “ for such materials and work as may be neces *701 sary to complete the present project of improvement.” (Act 13th July, 1892, 27 Stat. L., p. 92.) Up to this time no statutory authority existed for acquiring the land necessary for widening the river according to “the present project of improvement,” either by contract or judicial proceedings, unless it waá to be found in the general statutes. (The Acts 24th April, 1888, 25 Stat. L., p. 94, and 1st August, 1888, ib., 357.)
Such being the legislative conditions of the case, Capt. Oberlin M. Carter, the officer of engineers in charge of the improvement of the harbor of Savannah, proceeded, under the appropriation act of July, 1892, to advertise for proposals; and on the 20th of October, 1892, entered into a contract for dredging the river and cutting away the claimant’s land. This contract was approved by the Chief of Engineers, but was never carried into effect beyond dredging the river. That is to say, the contractors neirer entered or encroached upon the property of the claimant. The claimant was threatened with this impending cutting away of his river frontage, but his land was not actually taken or occupied bjr the contractors.
But about the time that Captain Carter was advertising for proposals he also gave notice to the claimant that he would shortly begin the work of cutting away his land, and that he (the claimant) must cease making certain improvements which he was then making on the strip which would be cut away. These improvements were vital to the claimant’s business— that of docking vessels for repairs. The claimant accordingly called on Captain Carter, who' reiterated that he must remove everything capable of removal outside of the new harbor line.
A week or two later Captain Carter’s authority was reenforced bjr a letter from the United States district attorney — a letter which is remarkable in its terms and intimations and in the effect which it produced upon the claimant. It is an important letter inasmuch as the claimant’s counsel regards it as in legal effect the taking of the land — as the Government’s assertion of its right to take the land to the exclusion of the owner. It is in these words:
“Macon, Ga., Aug. 21tfh, 1892.
“H. F. Willink, Esq., Savannah, Ga.
“Sir: O. M. Carter, Capt. Corps of Engineers, U. S. A., reports that you have had some piles driven in Savannah River *702 outside of the bulkhead line, opposite Whitaker st., Savannah, obstructing navigation, in violation of river and harbor act of Sept. 19, 1890 (26 Statutes L., p. 453,451). You will at once desist from further obstruction, and remove such piling as Capt. Carter desires removed, i. e., all piling outside of the bulkhead line. Unless this matter is attended to at once I will have to take put proceedings in court to compel compliance and to recover the penalties prescribed by the statute. I will be in Savannah in about two weeks to look after this matter, and I trust that the difficulties will have been adjusted to the-satisfaction of Capt. Carter by that time.
“Yours, truly,
“Marion Erwin,

“U. S. Atty.”

The claimant accepted this reference to the act 19th September, 1890, as a hint that he was putting himself in jeopardy, and interposed no more objections to the demands of the Government’s officers. The whole of his tract was not occupied; the strip of land was not cut away; the river frontage remained as it was; but for five years he was (as he believed) debarred from making a cutting or driving a pile on his own land. At the end of five years (December 2, 1897), after the well-known downfall of Captain Carter, the Secretary of War, by a stroke of his pen, established a “modified” harbor line-opposite the city of Savannah — that is to say, he reestablished the old harbor line. The claimant was thereby restored to the undisputed possession of his property, but during the interval his possession had been impaired and the valuable part of his business destroyed. He now sues for a constructive use and occupation by the Government.
After the act 13th July, 1892, authorizing contracts for work “necessary to complete the present project” of improving the harbor, and after the approval by the War Department of the contract 20th October, 1892, for cutting away the claimant’s liver frontage, it can not be maintained that Captain Carter was wholly without authority to use and occupy the claimant’s land. The court does not intend to intimate that he could enter upon the land against the claimant’s protest and occupy it vi at armis without his consent; but merely that his occupancy, as an agent of the defendants, for purposes incidental to the work of improvement and with the claimant’s assent, express, or implied, would not have been *703 ultra vires. Undoubtedly for a trival occupancy of this character, which has not hitherto been adverted to, a contract in the nature of a tenancy should be implied.
But it seems to the court only too obvious that the action is not brought for use and occupation, but to recover damages sustained and suffered by reason of the illegal and unjustifiable acts and intimidations of two Government officers. As to the act 19th September, 1890, upon, which these officers seem to have based their action, it. is one of those statutes which, being against common right, is to be strictly construed and which is to be interpreted and applied in accordance with the constitutional rights of individvals. The pains and penalties prescribed for erecting obstructions must be restricted to obstructions below lowwatermark — to obstructions erected, not by an owner of private property on his own land, but obstructions erected in public waters on land which, if it belongs to anyone, belongs to the United States. Certain it is that Congress never intended that an executive officer, bjr drawing a line through a man’s farm, should make it unlawful for him to step over it or subject him to fine and imprisonment for driving a pile or building a house on his own land. The harbor line of the Secretary of War, so far as it affected dry land and private ownership, was a line in the air— a line upon paper only — until the Government should acquire a legal right in harmony with the Constitution and in the manner prescribed by law. The claimant’s mistake was that he did not appeal from one officer to the Secretary of War and from the other to the Attorney-General.
The fact has been adverted to that, apart from the loss and damage which the claimant suffered in consequence of his complying with the demands of the engineer officer and the district attorney, the officers in charge of the improvement of the harbor used, with his consent, his wharves and a portion of his land for dockage and storage purposes. From this use and occupation the Government derived a benefit-, and for it there should be recovered a reasonable rent, which is found to be §2,000.
The judgment of the court is that the claimant recover §2,000.