# THE FIVE PER CENT. DISCOUNT CASES.[1]

### CERTIORARI TO THE UNITED STATES COURT OF CUSTOMS APPEALS.

Nos. 149 to 162. Argued February 25, 28, 1916; restored to docket for reargument March 6, 1916; reargued February 2, 1917.—Decided March 6, 1917.

Section IV, paragraph J, subsection 7, of the Tariff Act of October 3, 1913, c. 16, 38 Stat. 114, 196, after declaring that a discount of five per centum on all duties imposed by the act shall be allowed on such goods as shall be imported in vessels admitted to registration under

---

[1] The docket titles of these cases are: No. 149, *United States* v. *M. H. Pulaski Co., et al.;* No. 150, *United States* v. *R. B. Henry Co., et al.;* No. 151. *United States* v. *James Elliott & Co., et al.;* No. 152, *United*

the laws of the United States, adds, by way of proviso, "that nothing in this subsection shall be so construed as to abrogate or in any manner impair or affect the provisions of any treaty concluded between the United States and any foreign nation." *Held*, that the grant of the discount is confined to goods in American bottoms, and the effect of the proviso is to respect the treaty privileges with which such a grant would be in conflict, not by extending the grant to goods borne in foreign vessels, but by suspending the grant entirely while such privileges exist.

6 Cust. App. Rep. 291, reversed.

.THE case is stated in the opinion.

*The Solicitor General* for the United States:

The legislative history of § IV, paragraph J, subsection 7, shows it to be the result of a vain effort to compose differences between the House, which favored discriminating duties to American vessels, and the Senate, which resisted a disturbance of existing treaties. It was the purpose of the House to limit the discount to goods in American vessels only, thus discriminating in their favor against the ships of all other nations. The Senate was equally determined to brook no disturbance of existing treaties. The conference committee vainly endeavored to harmonize these divergent and wholly irreconcilable purposes.

The subsection is void by reason of the irreconcilability of its main clause and proviso; or at least is without present force or effect. The discount cannot be allowed to goods in American vessels alone, because, so construed, the

---

*States* v. *J. Wile Sons & Co.;* No. 153, *United States* v. *Robert Muller & Co.;* No. 154, *United States* v. *Wood & Selick, et al.;* No. 155, *United States* v. *E. La Montagne's Sons;* No. 156, *United States* v. *Albert Lorsch & Co., et al.;* No. 157, *United States* v. *Cullman Brothers, et al.;* No. 158, *United States* v. *G. W. Faber, Inc.;* No. 159, *United States* v: *Louis Meyers & Son;* No. 160, *United States* v. *William Openhym & Sons, et al.;* No. 161, *United States* v. *Park & Tilford;* No. 162, *United States* v. *Selgas & Co.*

subsection would abrogate, impair or affect the provisions of existing treaties. If self-executing, the treaties would be abrogated or impaired by such a grant. A treaty is abrogated by a subsequent inconsistent statute. *Rainey* v. *United States*, 232 U. S. 310; *Taylor* v. *Morton*, 2 Curtis, 454; *Whitney* v. *Robertson*, 124 U. S. 190.

The treaties are, as a matter of fact, not self-executing but executory; nevertheless, Congress did not design to contravene them. *Foster* v. *Neilson*, 2 Pet. 253, 313. Congress has evidenced its understanding that the treaties are executory. Act March 1, 1816, 3 Stat. 255, c. 22; Act December 17, 1903, 33 Stat. 3, c. 1; Crandall, Treaties, their Making and Enforcement, p. 145; Willoughby on Constitution, § 209. The decisions regard the treaties as executory. *Taylor* v. *Morton, supra; Whitney* v. *Robertson, supra.*

The discount cannot be allowed to goods in both American and treaty vessels. Such was manifestly not the intent of Congress, nor is it the legal consequence of the words employed. The language of the act does not support the construction suggested. The proviso was not intended to enlarge the operation of the discount clause, but, on the contrary, to restrict it. It is the usual office of a proviso to "limit and restrict the operation of the enacting clause." *Minis* v. *United States*, 15 Pet. 423, 445; *Quackenbush* v. *United States*, 177 U. S. 20, 26; *White* v. *United States*, 191 U. S. 545, 551.

The discount is, *pro tanto*, an exemption from taxation. Such exemptions are not to be raised or extended by implication. *Central R. R. & Banking Co.* v. *Georgia*, 92 U. S. 665, 674; *Ford* v. *Delta and Pine Land Co.*, 164 U. S. 662, 666.

Congress was fully advised of the apt words proper to accomplish an extension of the grant, and declined to use them.

To grant the discount to goods in American and treaty

bottoms alike would result in no substantial benefit to the former but would be a virtual donation to shippers in the latter and a wholly useless sacrifice of revenue. Results of allowance of discount to American and treaty bottoms demonstrate that Congress did not intend such construction. A discrimination against non-treaty ships alone is not a discrimination in favor of American vessels. There is evidence elsewhere in the act that Congress had no thought of singling out for discrimination British and French vessels in the indirect trade and ships of non-treaty countries.

The discrimination, if directed solely against non-treaty vessels, could have been more clearly and effectively accomplished without sacrifice of revenue by modifying § IV, paragraph J, subsection 1, and adding five per cent. to the discriminating duty of ten per cent. thereby imposed. In order to make the discount clause presently effective, a meaning should not be enforced which is repugnant to the main, revenue-producing portions of the act. *Van Dyke* v. *Cordova Copper Co.*, 234 U. S. 188.

Since it is impossible to give to the act any application to existing circumstances, it must be declared void, or operative only upon future condition. *Farmers' Bank* v. *Hale*, 59 N. Y. 53; *In re Hendricks*, 60 Kansas, 796, 806; *United States* v. *Cantril*, 4 Cranch, 167.

*Mr. Frederick W. Lehmann* and *Mr. James M. Beck* for respondents. The following counsel, representing various respondents, were also on the brief: *Mr. Thomas M. Lane, Mr. Albert H. Washburn, Mr. George J. Puckhafer, Mr. John A. Kratz, Mr. Henry J. Webster, Mr. John G. Duffy, Mr. Frederick W. Brooks, Jr., Mr. B. A. Levett, Mr. Rufus W. Sprague, Jr., Mr. Edward P. Sharretts, Mr. Homer S. Cummings, Mr. James L. Gerry, Mr. Edwin R. Wakefield* and *Mr. Allan R. Brown.*

The proviso operates to prevent the possible repeal

of the treaties by the later act, and in effect makes the treaty stipulations a part of the act, of equal efficacy with the provision for discount. The resulting law of the case is that the duties prescribed by the Tariff Act are to be discounted five per cent. on imports in American bottoms and no other or higher duties are to be levied upon imports in the vessels of treaty nations than in those of the United States. The number of such treaty nations would not alter the terms of the act and so could not alter its construction.

It is immaterial whether or not the treaty clauses involved operate *ex proprio vigore*, since the very statute under consideration gives them the force and effect of laws. Congress has recognized that such treaty provisions are self-executing. Treaty with Great Britain, 1815; Act of March 1, 1916, 3 Stat. 255; 14th Annals of Congress, 1st sess., p. 674; *ibid.*, pp. 46, 49–50; Reports of Committee on Foreign Relations, 1789–1901, vol. 8, p. 25. The executive branch has treated similar treaty provisions as self-executing without legislation by Congress. Treasury Decision, 20386; Foreign Relations U. S., 1899, pp. 740 *et seq.;* Act August 30, 1842, 5 Stat. 560. *Bartram* v. *Robertson*, 122 U. S. 116, compared.

The view that treaty provisions are executory contracts whose fulfillment is addressed solely to Congress has been repeatedly disavowed by this court. *Foster* v. *Neilson*, 2 Pet. 253, explained; *United States* v. *Percheman*, 7 Pet. 51, 89; *United States* v. *Schooner Peggy*, 1 Cranch, 103; *Ware* v. *Hylton*, 3 Dall. 199; *Hauenstein* v. *Lynham*, 100 U. S. 483; *United States* v. *43 Gallons of Whiskey*, 93 U. S. 188; *Tucker* v. *Alexandroff*, 183 U. S. 424, 429; *Oldfield* v. *Marriott*, 10 How. 146; *Geofroy* v. *Riggs*, 133 U. S. 258, 267; *Rainey* v. *United States*, 232 U. S. 310, 316; *Head Money Cases*, 112 U. S. 580, 598; *DeLima* v. *Bidwell*, 182 U. S. 1, 195. *Taylor* v. *Morton*, 2 Curtis, 254, distinguished.

Congress had power to grant the discount to imports in vessels of the United States and of nations with which the United States had reciprocal commercial treaty agreements. The contention of the Government makes the proviso a condition to the taking effect of the main clause and destroys the subsection in its entirety, while respondents' construction gives effect to the subsection as a whole, *Austin.* v. *United States,* 155 U. S. 417, distinguished; *Brushaber* v. *Union Pacific R. R. Co.,* 240 U. S. 1; *McLean* v. *United States,* 226 U. S. 374, 383.

The function of a proviso is to be determined in each case by what is there intended. It is frequently used to enlarge the operation of a law as well as to restrict it. *Georgia R. & B. Co.* v. *Smith,* 128 U. S. 174, 181; *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25, 36.

A rational interpretation will be given to a statute and a proviso and not one by which the statute will, through the proviso, destroy itself. *Adams Express Co.* v. *Croninger,* 226 U. S. 491; *United States* v. *Mille Lac Chippewas,* 229 U. S. 498.

The provision as it stands, and considered with reference to its terms, has a meaning and bears a sensible construction. It is not a meaningless or contradictory jumble of words. Explaining or distinguishing: *United States* v. *Cantril,* 4 Cranch, 167; *City of Mobile* v. *Eslava,* 16 Pet. 234, 247; *In re Hendricks,* 60 Kansas, 796; *Farmers' Bank* v. *Hale,* 59 N. Y. 53; *International Harvester Company* v. *Kentucky,* 234 U. S. 216; *Texas & Pacific Railway* v. *Interstate Commerce Commission,* 162 U. S. 197, 254.

The provision is not self-contradictory, nor contradictory of the reason of the legislation which was discrimination in favor of American shipping. Upon the contrary, the statute is responsive to that reason and in aid of that purpose. *Pirie* v. *Chicago Title and Trust Co.,* 182 U. S. 438, 451.

The addition of the proviso diminished but did not

exhaust the discrimination effected by the main clause. This goes to the usefulness of the statute and not its meaning or validity. *United States* v. *Plowman*, 216 U. S. 372, 375; *Unity* v. *Burrage*, 103 U. S. 447, 456.

It is not permitted under any rule of statutory construction to say that the proviso was a stroke of legislative *finesse*, designed by the Senate to nullify the section as formulated by the House, under pretense of merely qualifying it. Nothing savoring of fraud or farce may be imputed to either house. *McLean* v. *United States*, 226 U. S. 374, 383.

Courts will decline to avoid an act of legislation upon any suggestion as to the motives of legislators or of the unwisdom or impolicy of the act. *Weber* v. *Freed*, 239 U. S. 325, 330; *United States* v. *Union Pacific R. R. Co.*, 91 U. S. 72; *United States* v. *Goldenberg*, 168 U. S. 95, 102; *Dewey* v. *United States*, 178 U. S. 510, 521.

In our legislation the intent to save treaty rights has always been manifest. The form of words employed has varied, but language similar to that of the proviso to subsection 7 has been frequently used. Acts of March 27, 1804, § 6, 2 Stat. 300, c. 57; February 5, 1816, § 3, 3 Stat. 253, c. 10; April 27, 1816, § 6, 3 Stat. 314, c. 107; January 14, 1817, § 1, 3 Stat. 344, c. 3; August 30, 1842, § 8, par. 5, 5 Stat. 560, c. 260; Messages and Papers of the Presidents, vol. IV, pp. 400, 401; Act July 14, 1862, § 15, 12 Stat. 558, c. 163; Act March 3, 1883, § 11, 22 Stat. 525, c. 121; *Kelly* v. *Hedden*, 124 U. S. 196.

In more recent tariff legislation, Congress, in effecting its purpose of saving treaty rights, has repeatedly expressed a preference for the precise form of language found in the proviso of subsection 7. Act March 3, 1891, 26 Stat. 844, c. 534; Treasury Decision, 10824; Acts of August 27, 1894, par. 182½, 28 Stat. 521, c. 349; July 24, 1897, par. 209, 30 Stat. 168; August 5, 1909, § 3, 36 Stat. 83, c. 6; October 3, 1913, § IV, par. B, 38 Stat. 192.

The act is not to be nullified as unwise or impolitic because it may not in its immediate operation discriminate in favor of American shipping to the extent Congress intended should ultimately result. By the express terms of its proviso, it recognizes that the scope of its discrimination will be reduced by treaty provisions. There are nations whose trade is not protected by any treaty, and the treaties of some other nations are not comprehensive of all their trade with us. To such unprotected trade the discount would not apply. The legislation, as its history shows, was deliberately enacted, with a full knowledge of the facts and circumstances to which it applied, and of how it would operate, and with its consequences very distinctly pressed upon the attention of Congress. Each house of Congress conceded something and each house held to something of its views. The House of Representatives secured the discount on imports in American vessels and the Senate the preservation of our treaty stipulations by extending the discount to imports in treaty nation vessels. A present advantage to American shipping was intended, which would be great or small as the field of the practical operation of the proviso was small or great—an advantage which might be enlarged from time to time by changes in our treaty agreements. Subsections 1 and 7 of paragraph J of § IV of the Tariff Act of October 3, 1913, are laws of the same general nature operating by converse methods. In each case the advantage conferred by the general enactments upon American vessels is diminished by the proviso or qualifying clause as to treaty nation vessels; in the one case by suspending the discriminating duty and in the other by extending the discount. In neither case does the proviso nullify the subsection.

Substantial discrimination in favor of American vessels in fact results from respondents' construction. The official figures of our foreign commerce show that, by the inducement of the five per cent. discount, the volume

of merchandise imported in American vessels may be greatly increased.    The extent to which other nations share the discount affects only the measure in which the obvious purpose of the act is realized in operation.

*Mr. William L. Wemple,* by leave of court, filed a brief as *amicus curiæ.*

*Mr. Edward S. Hatch* and *Mr. Walter F. Welch,* by leave of court, filed a brief as *amici curiæ.*

MR. JUSTICE HOLMES delivered the opinion of the court.

In these cases the Court of Customs Appeals has held that by § IV, paragraph J, subsection 7, of the Act of October 3, 1913, c. 16, 38 Stat. 114, 196, merchandise imported in the registered vessels of the United States, or in the registered vessels of other nations entitled by treaty to pay no. higher duties than those levied upon vessels of the United States, is granted a discount of five per cent. upon the duties imposed by the act.    Following an enactment that, except as otherwise specially provided in the statute, duties should be levied upon all articles imported from any foreign country at the rates prescribed in the schedules, the above mentioned subsection 7 is as follows: "That a discount of 5 per centum on all duties imposed by this Act shall be allowed on such goods, wares, and merchandise as shall be imported in vessels admitted to registration under the laws of the United States: *Provided,* That nothing in this subsection shall be so construed as to abrogate or in any manner impair or affect the provisions of any treaty concluded between the United States and any foreign nation."    More or less complete reciprocity is established by treaty with nearly all the commercial countries of the world, and the discount of five per centum was extended by the Court of Customs Appeals to goods imported in vessels of Belgium, the

Netherlands, Great Britain, Austria-Hungary, Germany, Italy, Spain and Japan.

The Government contends that while the subsection may indicate a reversal of the policy of reciprocity that has prevailed more or less for the better part of a century, Rev. Stats., § 4228, it relies upon future negotiations to make the change effective and suspends action while the present treaties remain in force, since it could not give the discount to merchandise in American bottoms alone without breaking the numerous treaties to which we have referred. The argument on the other side is that the words of the subsection are satisfied by extending the discount to goods from all the treaty countries, whereas by the construction contended for by the Government they are emptied of meaning or at least of present effect. We are of opinion that the Government is right, and as the meaning of the words seems to us to be intelligible upon a simple reading and to be fortified by the facts preceding their adoption, we shall spend no time upon generalities concerning the principles of interpretation.

We have a clear opinion as to what the subsection means if the words are taken in their natural, straightforward and literal sense. It grants a discount only to goods imported in vessels registered under the laws of the United States, and conditions even that grant upon its not affecting treaties. There is a strong presumption that the literal meaning is the true one, especially as against a construction that is not interpretation but perversion; that takes from the proviso its ostensible purpose to impose a condition precedent, in order to universalize a grant that purports to be made to a single class, and to do so notwithstanding the express requirement of the statute that specified rates should be paid. Nobody would express such an intent in such words unless in a contest of opposing interests where the two sides both hoped to profit by an ambiguous phrase. But the section is

not ambiguous on its face, and there is no sufficient ground for creating an ambiguity from without, when it is considered that the purpose to favor American shipping was the manifest inducement for putting the subsection in.

The tariff bill as it first passed the House granted an exemption in favor of American shipping without the proviso. The clause was struck out by the Senate, and after it had been pointed out that such an enactment would violate many treaties there was a conference which led to the passage of the subsection in its present form. It seems to us obviously more reasonable to suppose that Congress was content to indicate a policy to be pursued when possible than that by circuitous and inapt language it enacted that there should be a general discount from the rates specifically directed to be charged. That the subsection means what it says and no more seems to us still plainer when it is considered that without going into nice calculations the benefit to American shipping of such a general discount would be at least problematical and certainly would be relatively small. A grant in present terms subject to a condition precedent is familiar to the law and is not unknown in grants of the present kind. *Dunlap* v. *United States*, 173 U. S. 65.

There was some discussion at the bar and in the court below upon the question whether the treaties operated as laws or were simply executory contracts, but it seems to us superfluous. If the statute bore the meaning attributed to it below it granted the discount to the nations having treaties of reciprocity, even if those treaties were only contracts. As in our opinion the subsection means what it says it grants the discount to none.

*Judgments allowing the discount of five per centum reversed.*

MR. JUSTICE DAY is of opinion that the statute was interpreted correctly by the Court of Customs Appeals, and therefore dissents.