The judgment of the United States Customs Court is *reversed.*

GARRETT, JUDGE, dissents.

United States *v.* E. De Grandmont, Inc. (No. 3540)[1]

[1] T. D. 46345

United States Court of Customs and Patent Appeals, April 12, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Daniel P. McDonald* and *Thomas J. McKenna*, special attorneys, of counsel), for the United States.
*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellee.

[Oral argument February 9, 1933, by Mr. McKenna and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

In this appeal by the United States from the judgment of the Second Division of the United States Customs Court, the proper dutiable classification of certain imported elastic fabrics, not exceeding 12 inches in width, is involved.

The Government states that the material is used for corsets, but there is nothing in the record to substantiate the statement. The merchandise was, by the collector, classified under the last provision of paragraph 1529(c) of the Tariff Act of 1930, which paragraph reads as follows:

PAR. 1529(c). Corsets, girdle-corsets, step-in-corsets, brassieres, bandeaux-brassieres; corsets, girdle-corsets, or step-in-corsets, attached to brassieres or bandeaux-brassieres; all similar body-supporting garments; all the foregoing, of whatever material composed, finished or unfinished and all wearing apparel or articles to which any of the foregoing is attached, 60 per centum ad valorem; all the foregoing composed in whole or in part of elastic fabrics, 75 per centum ad valorem. No wearing apparel or article so attached to such body-supporting garment shall be subject to a less rate of duty than if imported separately. *Elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber, 60 per centum ad valorem.* (Italics ours.)

The importer, appellee, protested the classification of the merchandise and here relies upon its protest claim that the merchandise is dutiable under paragraph 912 of said act, which reads as follows:

PAR. 912. *Fabrics, with fast edges, not exceeding twelve inches in width, and articles made therefrom;* tubings, garters, suspenders, braces, cords, tassels, and cords and tassels; *all the foregoing, wholly or in chief value of cotton or of cotton and india rubber, and not specially provided for, 35 per centum ad valorem;* spindle banding, and lamp and stove wicking, wholly or in chief value of cotton or other vegetable fiber, 30 per centum ad valorem; candle wicking, wholly or in chief value of cotton or other vegetable fiber, 10 cents per pound and 12½ per centum ad valorem; boot, shoe, or corset lacings, wholly or in chief value of cotton or other vegetable fiber, 30 per centum ad valorem; loom harness, healds, and collets, wholly or in chief value of cotton or other vegetable fiber, 35 per centum ad valorem; labels, for garments or other articles, wholly or. in chief value of cotton or other vegetable fiber, 50 per centum ad valorem. (Italics ours.)

The trial court, by its judgment,. sustained the claim in the protest that the merchandise, shown by the invoices to be 12 inches or less in width, was dutiable at 35 per centum under paragraph 912.

It is not disputed but that the merchandise involved is described in both of the competing provisions; that is to say, the merchandise consists of elastic fabrics in part of india rubber, has fast edges, in width does not exceed 12 inches, and is in chief value of cotton or cotton and india rubber.

It is the contention of the Government, first; that paragraph 1529 (c) more specifically describes the importation than does paragraph 912; second, that the merchandise is specially provided for in paragraph 1529 (c), and that the provision "not specially provided for" in paragraph 912 excludes the merchandise from classification thereunder; third, that in event the merchandise is equally described in the two paragraphs, it must be classified at the higher rate; and fourth, that the legislative history of the two paragraphs shows clearly that Congress intended that the importation should be classified under paragraph 1529 (c).

The appellee contends that the sole question is as to which of the competing provisions is the more specific.

The court below in deciding the case said:

As between these two paragraphs, in the absence of the other, either is undoubtedly sufficiently broad and comprehensive to cover the merchandise in question. We must therefore determine which of the two paragraphs more specifically covers the merchandise.

\*     \*     \*     \*     \*     \*     \*

The provision in said paragraph 912 covers only such fabrics as have fast edges, and only such fabrics as do not exceed 12 inches in width, and only such fabrics as are composed wholly or in chief value of cotton and india rubber. Paragraph 1529 (c) covers all elastic fabrics, regardless of whether or not the edges are fast, regardless of whether the width be more or less than 12 inches, and regardless of the material of which such fabrics are composed, provided they are also in part of india rubber.

It is therefore clear that the provision for "Fabrics, with fast edges, not exceeding 12 inches in width, * * * wholly or in chief value of cotton or of cotton and india rubber, and not specially provided for," is much narrower and more specific than the provision for "Elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber." *Hartranft* v. *Myer*, 135 U. S. 237; *Arnold* v. *United States*, 147 U. S. 494; *Brennan* v. *United States*, 136 Fed. 743.

To hold fabrics, with fast edges, not exceeding 12 inches in width, composed wholly or in chief value of cotton and india rubber, dutiable under the provisions of paragraph 1529 (c) would be to practically, if not entirely, nullify the provisions of paragraph 912.

The trial court held that there was no ambiguity in the two paragraphs and that it was not permitted to consult extraneous matters for the purpose of determining the intent of Congress, cited many authorities, and gave no consideration to the legislative history and extrinsic facts.

Unquestionably, both paragraphs are "sufficiently broad and comprehensive to cover the merchandise in question." In determining the relative specificity of competing provisions in tariff acts, where there are several terms under consideration, the question frequently becomes a close one and one difficult of satisfactory determination. This is true in the case at bar. Relative specificity is merely a rule of construction and is not always given controlling effect, certainly not where the intent of Congress is shown to be contrary to a result obtained by its application. *United States* v. *Clay Adams Co. (Inc.)*, 20 C. C. P. A. (Customs) 285, T. D. 46078.

The court below took the position that the meaning of the two paragraphs under consideration was too free from ambiguity to warrant a consideration of extrinsic facts at arriving at the intent of Congress. The familiar rule that where there is no ambiguity no construction is necessary was relied upon. Also, the rule that extrinsic facts may be resorted to to solve ambiguities but not to create them was reiterated.

It is our view that while there is no uncertainty about the meaning of the *words* "Elastic fabrics * * * in part of india rubber" or the *words* "Fabrics, with fast edges, not exceeding twelve inches in width," if we were not aided by some extrinsic facts there would be very grave doubt as to the intent of the legislature in using the two competing terms in the same act. As this court said in *Stoeger* v. *United States*, 15 Ct. Cust. Appls. 291, T. D. 42472:

The meaning of words used may not be ambiguous so as to call for construction, but the intent of Congress must be ascertained and declared by the courts if unambiguous words are used in an ambiguous manner. Assuming the merchandise involved, in this case, is side arms, and at the same time pistols, doubt has arisen as to which rate of duty Congress intended should apply. If extraneous connected circumstances, including the history of the legislation and similar legislation, and the consideration of the context of the whole act and other related acts, as well as the effects and consequences of the different interpretations that might be placed on the law, point out unmistakably to the court the intentions of the framers of the act, no rule of construction can properly be interpreted [interposed] to defeat such intent.

In the case at bar it is not necessary to go to legislative history to create a doubt as to the intent of the legislature in enacting the two provisions covering the imported merchandise. The doubt exists when the two paragraphs are considered, even though the language in one paragraph may be slightly more specific than the language in the other as applied to the imported merchandise. One provision provides for "Elastic fabrics * * * in part of india rubber." The other provision provides for fabrics which may be "wholly or in chief value of cotton or of cotton and india rubber" and which may not be elastic at all. Did Congress intend by the new provision "elastic fabrics" in the Tariff Act of 1930 to eliminate entirely from paragraph 912 elastic fabrics of any width in part of india rubber? The difficulty of answering this question, when confined to a consideration of the context of the two paragraphs in controversy, is at once apparent. But, when the light of other facts and circumstances, which we are privileged to use, is thrown upon the question, the answer becomes plain.

In *United States* v. *Fisher*, 2 Cranch 358, 386, Chief Justice Marshall, in a United States Supreme Court decision, said:

> Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived.

Throughout the entire history of the Supreme Court it has always consulted reports of committees and other pertinent extrinsic facts in order to get light on the congressional intent where that intent was not shown by the context of the legislative provision or provisions under consideration. Of course, such extrinsic facts were not resorted to for the purpose of creating doubt. Doubt as to the congressional intent must first exist.

Ordinarily, the rule against consulting extrinsic facts in the interpretation of statutes applies where there can be but one reasonable construction of the language when it is given its ordinary meaning, but even under those circumstances the rule is not applicable where the acceptance of the letter of the statute produces results so gross as to shock the general moral or common sense. *Crooks* v. *Harrelson*, 282 U. S. 55; *Burnet* v. *Chicago Portrait Co.*, 285 U. S. 1. In the enactment of tariff statutes it sometimes occurs, as here, that plain language is used in separate paragraphs which language is broad enough to include in each of such paragraphs the same merchandise, and from the language used it can not be satisfactorily determined under which paragraph Congress meant the importation should be classified. Such a situation calls for the application of the master rule which is to interpret statutes so as to carry out the legislative intent. *Markell* v. *United States*, 16 Ct. Cust. Appls. 518, T. D. 43239; *United States* v. *Stone & Downer Co.*, 274 U. S. 225; *United States* v. *Katz*, 271 U. S.

354; *Procter & Gamble Mfg. Co.* v. *United States*, 19 C. C. P. A. (Customs) 415, T. D. 45578.

The instant case is quite similar to the case of *American Net & Twine Co.* v. *Worthington*, 141 U. S. 468, where there was a competition between "flax or linen thread" in one pargraph of the Tariff Act of 1883 and a provision for "seines and seine and gilling twine" in another paragraph of the same act. The language in both provisions was plain, but nevertheless the Supreme Court, in holding that the merchandise should be classified as gilling twine, said:

> While the statements made and the opinions advanced by the promoters of the act in the legislative body are inadmissible as bearing upon its construction, yet reference to the proceedings of such body may properly be made to inform the court of the exigencies of the fishing interests and the reasons for fixing the duty at this amount. *Jennison* v. *Kirk*, 98 U. S. 453, 459; *Blake* v. *National Banks*, 23 Wall. 307, 317; *The Collector* v. *Richards*, 23 Wall. 246, 258; *Gilmer* v. *Stone*, 120 U. S. 586, 590; *United States* v. *Union Pacific Railroad*, 91 U. S. 72, 79. It seems that the duty upon seines was originally fixed at six and one-half cents per pound; when, upon representations of the fishermen upon the Lakes, who use seines and gill nets which are only made of Scotch and Irish flax, and always from imported twine, that they were suffering from the competition of Canadian fishermen, who imported their twine free of duty and found a ready sale for their fish in American ports, also free of duty, an effort was made to put seines and seine and gilling twine on the free list; but the matter was finally compromised by fixing the duty at 25 per cent ad valorem. Unless this be held to include the thread of which these gill nets are actually made, the intention of Congress will evidently be defeated.

In numerous other cases the Supreme Court has taken up the legislative history which showed where, when, and under what circumstances amendments were made, and has considered statements in the reports of committees showing the intent of the act in order that it might determine the *scope* of the provision which it was considering. In many of these cases the decision in *Holy Trinity Church* v. *United States*, 143 U. S. 457, 464, has been cited, and we note that it is cited more frequently in late years than formerly. In the *Holy Trinity Church* case there was no ambiguity in the language but there was doubt in the mind of the court as to the scope of the act, and resort was had to its legislative history and other pertinent considerations.

In *Binns* v. *United States*, 194 U. S. 486, 495, it was said:

> * * * While it is generally true that debates in Congress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body, *United States* v. *Freight Association*, 166 U. S. 290, 318, yet it is also true that we have examined the reports of the committees of either body with a view of determining the scope of statutes passed on the strength of such reports. *Holy Trinity Church* v. *United States*, 143 U. S. 457, 464. When sections 461 and 462 were under consideration in the Senate the chairman of the Committee on Territories, in response to inquiries from Senators, made these replies, * * *.

See the following authorities: *The Five Per cent. Discount cases*, 243 U. S. 97, 107; *Richbourg Motor Co.* v. *United States*, 281 U. S. 528; *Graham & Foster* v. *Goodcell*, 282 U. S. 409, 418; *United States* v. *Stone & Downer Co., supra; Norwegian Nitrogen Products Co.* v. *United States*, 288 U. S. 294 (decided February 6, 1933).

Being in doubt as to the intended scope of the two provisions under consideration and not being able satisfactorily to arrive at the intent of the legislature when confined to a consideration of the context of the provisions, we will now consider the legislative history of the same.

Paragraph 912 of the Tariff Act of 1930 is a reenactment of paragraph 913 of the Tariff Act of 1922 as far as the provision under consideration is concerned. Before the House committee certain manufacturers of elastic fabrics sought to have a paragraph put in the bill incorporating, as far as the issues involved here are concerned, substantially the same language which we have italicized in paragraph 912 and in addition, among other things, containing the following language:

elastic products of any width, with or without fast edges, suitable for use in the manufacture of corsets [etc.] or similar articles; whether knit, woven, or braided, of whatever material composed, except silk or artificial silk, 60 per centum ad valorem;

The House, however, did not adopt the suggestion further than to put in paragraph 1529 (c), the paragraph covering corsets and body-supporting articles, the following provision:

Elastic fabrics of whatever material composed, knit, woven, or braided, in part of india rubber, more than twelve inches in width, 60 per centum ad valorem.

This provision was in the bill when it passed the House. The same American manufacturers suggested to the Finance Committee of the Senate, which had charge of the bill, that the provision "more than twelve inches in width" be eliminated, and explained, as is shown by the hearings before the Committee on Finance, Tariff Act of 1929, Schedule 15, page 430, that the 12-inch limitation in the House provision for elastic products made the provision ineffective. The committee of the Senate eliminated the phrase "more than twelve inches in width" and in its report to the Senate (Report No. 37, 71st Cong., 1st sess., p. 51), referring to paragraph 1529 (c), said:

It was brought to the attention of the committee that the House provisions imposing a duty of 60 per cent ad valorem on elastic fabrics in part of india rubber, more than 12 inches in width, could be evaded by bringing in fabrics of less than 12 inches in width and sewing them together. The committee amendment, therefore, strikes out the size limitation, so that the 60 per cent rate will apply regardless of width.

When the context of the competing provisions is considered in the light of the pertinent legislative history, no other reasonable conclusion

is left than that Congress intended that all elastic fabrics in part of india rubber should be classified under paragraph 1529 (c), even though described in paragraph 912.

It has been suggested that this result would be to nullify the provisions of paragraph 912 and that it would leave little, if anything, dutiable under that paragraph. A careful consideration of paragraph 912 shows that this suggestion is without merit. The paragraph provides for many things, and when elastic fabrics are removed from the particular part of the paragraph under consideration it in no sense changes the provision for nonelastic fabrics. It must be remembered that fabrics in chief value of cotton or cotton and india rubber are not necessarily elastic.

For the reasons hereinbefore assigned we conclude that the importer's protest should have been overruled, and the judgment of the United States Customs Court is *reversed*.