## LA MERCED.

## UNITED STATES v. ALASKA SOUTHERN PACKING CO. et al.

### No. 7996.

Circuit Court of Appeals, Ninth Circuit.

June 10, 1936.

J. Charles Dennis, U. S. Atty., and Owen P. Hughes and Gerald Shucklin, Asst. U. S. Attys., all of Seattle, Wash.

R. J. Venables, Donald G. Graham, James B. Howe, and George C. Guttormsen, all of Seattle, Wash., for appellees.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

From an order dismissing a libel of information filed by the United States against the oil screw La Merced, her engines, apparel, equipment, tackle, and appurtenances, which order was entered after exceptions filed by appellee as claimant had been sustained, the government appealed.

The material allegations appear as follows:

"That said vessel on or about the eighteenth day of April, 1935, while lying at anchor in the navigable waters of the United States, to-wit, the waters of Lake Union, Seattle, Washington, was used and employed in violating the provisions of 33 U.S.C.A. § 407, in the following manner, to-wit, that at or about eleven A. M. of said date, at the time and place aforesaid, refuse matter, to-wit, oil, was thrown, discharged and deposited from or out of said vessel into the navigable water of the United States, to-wit, into the waters of Lake Union, Seattle, Washington.

"That by reason of the foregoing a penalty of not to exceed Twenty-five Hundred Dollars ($2,500.00), nor less than Five Hundred Dollars ($500.00) was incurred by reason of the facts hereinabove stated, said penalty becoming by virtue of 33 U.S.C.A. § 412 a lien upon and against the above named vessel."

The statute (33 U.S.C.A. § 407) on which the libel is based provides in part: "It shall not be lawful to throw, discharge, or deposit * * * either from or out of * * * floating craft of any kind * * * any refuse matter of any kind or description whatever * * * into any navigable water of the United States; * * * and it shall not be lawful to deposit * * * material of any kind in any place on the bank of any navigable water * * * whereby navigation shall or may be impeded."

A penalty is provided for a violation of this section by 33 U.S.C.A. § 411, and provisions for summarily proceeding against the craft are made in 33 U.S.C.A. § 412.

Section 407 as quoted, if read literally, prohibits two acts. The first is the discharge of "any refuse matter of any kind or description whatever * * * into any navigable water of the United States." The other act prohibited is the discharge of "material of any kind in any place on the bank of any navigable water * * * whereby navigation shall or may be impeded or obstructed." The first prohibited act is a discharge of refuse into navigable water. The second is the discharge of "material of any kind" on the bank of navigable water, and the clause makes no distinction concerning the "kind" of material, that is, whether it is refuse matter or not, so long as the material, whatever its character, impedes or obstructs navigation. The first prohibited act is not made dependent on the fact that the refuse matter must impede or obstruct navigation.[1]

The sole issue is whether the phrase "any refuse matter of any kind or description whatever" includes "oil" within its meaning.

Section 407 is a part of the Act of March 3, 1899. Preceding this act was the Act of June 29, 1888, § 1 (33 U.S.C.A. § 441), which prohibited the discharge "of refuse, dirt, ashes, cinders, mud, sand, dredgings, sludge, acid, or any other matter of any kind" in the tidal waters of the harbor of New York or its adjacent or tributary waters. Concerning this clause of the 1888 act, it was said in The Colombo (C.C.A.2) 42 F.(2d) 211, 212: "In 1888, when it [act of 1888] was passed, oil-burning steamers were not known, and it was almost certainly for this reason that oil was not specifically included, for in recent years this has become a great nuisance and a serious danger to the harbor. 'Sludge' scarcely covers oil, but the general language with which the clause concludes is verbally broad enough to include it, and, if read ejusdem generis, leaves no fair doubt."

And with reference to the same act it was said in The Albania (D.C.N.Y.) 30 F. (2d) 727, 728: "The oil discharged * * * was 'refuse,' within the ordinary meaning of that term, and also within the meaning of the clause 'any other matter of any kind,' even if such general terms must be limited to matter ejusdem generis as the materials specifically designated."

The Act of June 7, 1924, § 3 (33 U.S.C.A. § 433), known as the "Oil Pollution Act," specifically prohibited discharge of oil, under the particular circumstances specified, into coastal navigable waters of the United States. Section 8 of that act (33 U.S.C.A. § 437) provided: "Sections 431 to 436, inclusive, of this chapter shall be in addition to the laws existing prior to June 7, 1924, for the preservation and protection of navigable waters and shall not be construed as repealing, modifying, or in any manner affecting the provisions of those laws."

Regarding the Oil Pollution Act of 1924 (33 U.S.C.A. § 431 et seq.) appellee says:

" * * * Accompanying the bill (S. 1942) to the floor of Congress was the report of the Committee on Commerce (Senate Report No. 66, 68th Congress, First Session, Public No. 238). In this report the Committee presented its reasons for the necessity of the passage of the bill (Oil Pollution Act of 1924) and interpreted section 407 as not covering the discharge of oil in the navigable waters of the United States. The Oil Pollution Act was, therefore, in its opinion, a necessary act to be passed by Congress. The report states in part:

" 'It is believed that the public interests warrant legislation for an abatement of this evil. That there is not sufficient authority under existing law is indicated in correspondence had by your committee with the office of the Chief of Engineers relative to this general subject as it was being considered in the last Congress * * *' "

The letter referred to, as printed in the brief, contains among other things the following: "This legislation was enacted at a time before the serious pollution·of navigable waterways by oil had occurred or was anticipated. Its essential purpose was to prevent the introduction into navigable channels of the only kind of material which had given trouble to navigation up to that item [time?]—that is, such material as would form an actual physical obstruction to navigation. * * * "

---

[1] Decisions showing the construction of the statute in this paragraph may be found in 33 U.S.C.A. § 407, p. 428.

Included with the report was a copy of a letter received by the Chief of Engineers from the United States attorney for the Eastern District of Virginia. In the latter letter the attorney reported a decision of the United States District Judge for that district, holding that section 407 did not prohibit pollution of navigable waters by oil.

In the instant case the government contends that the phrase above quoted from section 407 includes oil as "refuse matter" and relies on the two cases above cited. Appellee contends that such quoted phrase includes as "refuse matter" only such "refuse" as impedes or obstructs navigation. This contention is based on the argument that such was the intention of Congress as shown by the committee report accompanying the Oil Pollution Act;[2] that a practical interpretation of an ambiguous or uncertain statute by the executive department charged with its administration is entitled to the highest respect by the courts;[3] that section 411 is a penal statute and should be strictly construed.[4]

We see no ambiguity in the statute which prohibits the deposit of "any refuse matter of any kind or description whatever * * * into any navigable water of the United States." It is difficult to see how the statute could be plainer, for the meaning is clear under a literal reading of the statute. In Helvering v. New York Trust Co., 292 U.S. 455, 464, 54 S.Ct. 806, 808, 78 L.Ed. 1361, it was said: "The rule that, where the statute contains no ambiguity, it must be taken literally and given effect according to its language, is a sound one not to be put aside to avoid hardships that may sometimes result from giving effect to the legislative purpose. Commissioner of Immigration v. Gottlieb, 265 U.S. 310, 313, 44 S.Ct. 528, 68 L.Ed. 1031."

And in United States v. M. H. Pulaski Co., 243 U.S. 97, 106, 37 S.Ct. 346, 347, 61 L.Ed. 617, it is said that: "There is a strong presumption that the literal meaning is the true one, especially as against a construction that is not interpretation, but perversion."

Under such literal construction we see no reason for limiting "refuse matter of any kind or description whatever" to such refuse matter only as would impede or obstruct navigation. The plain intention of Congress was to prohibit the discharge into navigable water of any material, so long as such material was "refuse matter of any kind or description whatever." If a material falls within these words of the statute, the discharge of the same into navigable water is prohibited. Under particular circumstances, we see no reason why oil could not be "refuse matter" the same as any other material.

The cases relied upon by the government are not strictly analogous, because the language of the statute therein discussed is somewhat broader than the language of the statute here in question.

The contention of appellee that the intention of Congress with respect to section 407 is shown by the committee report accompanying the bill known as the Oil Pollution Act of 1924 is untenable. The intention with respect to the latter act may be shown, but the report neither says nor implies what the intention of Congress was with respect to a statute enacted some 35 years prior to that time. Although there are other reasons why the remaining contentions of appellee are inapplicable, they are best answered by the simple statement that the statute is not ambiguous.

One other contention of appellee is that "a reading of the two statutes, 33 U.S.C.A. § 407 and the Oil Pollution Act of 1924, clearly shows that the later act, by its terms, specifically covers the discharge of oil into navigable waters. The necessary effect of the enactment of the Oil Pollution Act was to withdraw from section 407, if ever it covered it, all regulation of the discharge of oil into navigable waters. * * *"

This contention is answered by reference to section 8 of the Oil Pollution Act (33 U.S.C.A. § 437) quoted above.

Reversed.

---

[2] Appellee states that the courts have a right to look to such reports to ascertain the legislative intent where the meaning of the statute is doubtful, citing Duplex Printing Press Co. v. Deering, 254 U.S. 443, 474, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; Jordan v. United States (C.C.A.9) 36 F.(2d) 43, 73 A.L.R. 312.

[3] Citing Swendig v. Washington Water Power Co., 265 U.S. 322, 44 S.Ct. 496, 68 L.Ed. 1036.

[4] Citing Matthew Addy Co. v. United States, 264 U.S. 239, 44 S.Ct. 300, 68 L.Ed. 658; Willink v. United States, 38 Ct.Cl. 693.